UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | | |
|---|---|---|
| MAIN STREET AMERICA ASSURANCE | ) | |
| COMPANY and NGM INSURANCE | ) | |
| COMPANY, | ) | |
|     Plaintiffs, | ) | |
| | ) | Civil Action: 2:24-cv-922 |
|         v. | ) | |
| | ) | |
| TARGETT'S, INC. | ) | |
|     Defendant. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

This is an action for declaratory relief pursuant to 28 U.S.C. § 2201, *et seq*., in which the plaintiffs, Main Street America Assurance Company and NGM Insurance Company (collectively, "Plaintiffs") seek a declaration that they do not owe defense and/or indemnity coverage to Targett's, Inc. ("Targett's") under insurance policies they issued to Targett's relating to a CERLA claim arising out of environmental contamination at real property Targett's once owned in Windsor, Vermont. As detailed below, Plaintiffs do not owe defense or indemnity coverage for any liability Targett's might have regarding CERCLA claim due to exclusionary language in Plaintiffs' insurance policies. Consequently, this Court should enter judgment for Plaintiffs declaring that they have no duty to defend or indemnify Targett's with respect to the claim.

### PARTIES

1.     Main Street America Assurance Company ("MSA") is an insurance company organized under the laws of the State of Florida with a principal place of business located in Jacksonville, Florida.

2.     NGM Insurance Company ("NGM") is an insurance company organized under the laws of the State of Florida with a principal place of business located in Jacksonville, Florida.

3.      Targett's is a corporation organized under the laws of the state of New Hampshire with a principal place of business located at 30 Ashuelot Street in Keene, New Hampshire.

## JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.A § 1332 because the amount in controversy exceeds $75,000 and the dispute is between citizens of different states.

5.      Jurisdiction is further appropriate in this Court because this is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and an actual case or controversy of a justiciable nature exists between the parties involving the rights and liabilities under an insurance policy, in which litigation is imminent and inevitable, and which controversy may be determined by a judgment in this action.

6.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this judicial district.

## FACTUAL BACKGROUND

Targett's Use Of 7 Maple Street

7.      Upon information and belief, Targett's is a dry-cleaning business that was formed in New Hampshire in or around 1945.

8.      In or around 1969, Targett's acquired the real property known and numbered as 7 Maple Street in Windsor, Vermont ("the Property").

9.      Upon information and belief, the Property was being used as a commercial dry cleaning facility at the time Targett's purchased it.

10.     Targett's used the Property as a dry-cleaning facility between 1969 and 1989.

11.     In or around 1989, Targett's sold the Property to an individual named Gerald Britton, the principal of JB Fabricare, LLC.

The Policies

12.     MSA issued the following Businessowners liability policies to Targett's for various policy periods between 1990 and 2018 (collectively, "the MSA Policies"):

| Policy No. | Policy Period |
|---|---|
| BPT70740 | July 1, 1990 through July 1, 1991 |
| BPT72448F | July 1, 2012 through July 1, 2013 |
| BPT72448F | July 1, 2013 through July 1, 2014 |
| BPT72448F | July 1, 2014 through July 1, 2015 |
| BPT72448F | July 1, 2015 through July 1, 2016 |
| BPT72448F | July 1, 2016 through July 1, 2017 |
| BPT72448F | July 1, 2017 through July 1, 2018 |

13.     MSA first issued Policy No. BPT70740 to Targett Williams, Inc. for the policy period effective July 1, 1990 through July 1, 1991 ("the 1990 BOP"). A true and accurate copy of the 1990 BOP is annexed hereto as Exhibit A and incorporated by reference in its entirety.

14.     The 1990 BOP contains the following insuring agreement that provides, in relevant part, as follows:

**A. Coverages**
**1. Business Liability**
    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," "personal injury," or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:
    **(1)** The amount we will pay for damages is limited as described in Section D – LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE and
    **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under COVERAGE EXTENSION – SUPPLEMENTARY PAYMENTS.

**b.** This insurance applies:

    **(1)** To "bodily injury" and "property damage" only if:

        **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        **(b)** The "bodily injury" or "property damage" occurs during the policy period.

    . . .

**c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

**d.** "Property damage" that is loss of use of tangible property that is not physically injured will be deemed to occur at the time of the "occurrence" that caused it.

15. The 1990 BOP precludes coverage for certain claims and damages, including the following, in relevant part:

**B. Exclusions**

   **1. Applicable to Business Liability Coverage**

   This insurance does not apply to:

   . . .

**f.** **(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

    **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

    **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

    **(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

        **(i)** If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

        **(ii)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

4

Subparagraphs **(a)** and **(d)(i)** do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**(b)** Claim or "suit" by or on behalf of a government authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any   way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

. . .

**k.** "Property damage" to:

**(1)** Property you own, rent, or occupy.

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises.

. . .

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

\*\*\*

16.     Certain conditions may impact coverage under the 1990 BOP, including the following:

### E.  LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS

. . .

**2.  Duties in The Event Of Occurrence Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation, settlement or defense of the claim or "suit;" and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

  **d.** No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense other than for first aid without our consent.

17. The 1990 BOP assigns special meaning to words, including the following:

### F.  LIABILITY AND MEDICAL EXPENSES DEFINITIONS

. . .

**3.** "**Bodily injury**" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . .

**9.** "**Occurrence**" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

**12.** "**Property damage**" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**13.** "**Suit**" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

  **a.** An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

  **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

\*\*\*

18.     Upon information and belief, Targett's did not renew the 1990 BOP and obtained insurance coverage with another insurance carrier upon its lapse in July 1991.

19.     MSA is unaware of any insurance policies issued to Targett's covering policy periods between July 2, 1991 and June 30, 2012.

20.     MSA then issued Businessowners Policy No. BPT72448F to Targett's Inc. & TD Properties of Keene LLC for the policy period effective July 1, 2012 through July 1, 2013 ("the 2012 BOP").  A true and accurate copy of the 2012 BOP is annexed hereto as <u>Exhibit B</u> and incorporated by reference in its entirety.

21.     The 2012 BOP's coverage form (Form No. BPM P 2 1207) contains the following insuring agreement that provides, in relevant part, as follows:

**A. Coverages**
**1. Business Liability**
    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
        **(1)** The amount we will pay for damages is limited as described in Paragraph **D** – Liability and Medical Expenses Limits of Insurance in Section **II** – Liability; and
        **(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.
    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension – Supplementary Payments.
    **b.** This insurance applies:
        **(1)** To "bodily injury" and "property damage" only if:
            **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
            **(b)** The "bodily injury" or "property damage" occurs during the policy period; and
            **(c)** Prior to the policy period, no insured listed under Paragraph **C.1** Who Is An Insured, and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such

7

"bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

    **(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

**c.** "Bodily injury" or property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part of the "bodily injury" or "property damage" to use or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damage because of the "bodily injury" or "property damage;"

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

\*\*\*

22.    The 2012 BOP precludes coverage for certain claims and damages, including the following, in relevant part:

**B. Exclusions**

    **1. Applicable To Business Liability Coverage**

      . . .

    **f. Pollution**

      **(1)** "Bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage migration, release or escape of "pollutants."

        **(a)** At or from any premises, site or location which is or was at any time owned or occupied by or rented or loaned to any insured. However, this subparagraph does not apply to:

          . . .

          **(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations

performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "bodily injury" or "property damage" arising out of heat, smoke, or fumes from a "hostile fire."

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)**     Any insured; or

**(ii)**     Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises site or location with the intent that they be discharged, disperses or released as part of the operations being performed by such insured, contractor or subcontractor.

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

**(e)** At or from any premises, site or location on which any insured or any contractor or subcontractor working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or

9

neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

. . .

**k.  Damage To Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away, or abandon, if the "property damage" arises out of any part of those premises.

. . .

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

\*\*\*

23.     Certain conditions may impact coverage under the 2012 BOP, including:

**E.  Liability And Medical Expenses General Conditions**

. . .

**2.  Duties in The Event Of Occurrence Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the  claim or "suit" and the date received; and

  **(2)** Notify us as soon as practicable.

  You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

 **c.** You and any other involved insured must:

  **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"

  **(2)** Authorize us to obtain records and other information;

  **(3)** Cooperate with us in the investigation, settlement or defense of the claim or "suit;" and

  **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

 **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense other than for first aid without our consent.

***

24. The 2012 BOP assigns special meaning to certain words, including the following:

 **F.  Liability And Medical Expenses Definitions**

  . . .

  **3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

  . . .

  **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

  . . .

  **15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

  . . .

  **17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

  For the purposes of this insurance, electronic data is not tangible property.

  As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications, software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices

or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury." "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

    **a.** An arbitration proceeding in which such damages are claimed and to which you must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

***

25. The 2012 BOP was renewed on a yearly basis for successive policy periods through July 1, 2018. Each renewal policy contained the same liability coverage form (Form No. BPM P 2 1207) with an insuring agreement, exclusions, conditions, and definitions that are identical to those in the 2012 BOP.

26. Upon information and belief, Targett's allowed the MSA Policies to lapse on July 1, 2018 and obtained any subsequent insurance coverage with another insurance carrier.

27. NGM issued the following Commercial Umbrella liability policies to Targett's for various policy periods between 1990 and 2018 (collectively, "the NGM Policies"):

| Policy No. | Policy Period |
|---|---|
| CUT70740 | July 1, 1990 through July 1, 1991 |
| CUT72448F | July 1, 2012 through July 1, 2013 |
| CUT72448F | July 1, 2013 through July 1, 2014 |
| CUT72448F | July 1, 2014 through July 1, 2015 |
| CUT72448F | July 1, 2015 through July 1, 2016 |
| CUT72448F | July 1, 2016 through July 1, 2017 |
| CUT72448F | July 1, 2017 through July 1, 2018 |

28. NGM first issued Commercial Umbrella Policy No. CUT70740 to Targett Williams, Inc. for the policy period effective July 1, 1990 through July 1, 1991 ("the 1990 UMB"). A true and accurate copy of the 1990 UMB is annexed hereto as <u>Exhibit C</u> and incorporated by reference in its entirety.

29.    The 1990 UMB's coverage form (Form No. 64-6740 (2/69)) contains the following

insuring agreement that provides, in relevant part, as follows:

> In consideration of the payment of the premium, in reliance upon the statements in
> the declarations made a part hereof and subject to all the terms of this policy agrees
> with the Named insured as follows:

### I.  INSURING AGREEMENT

The company will pay on behalf of the insured all sums which the insured shall be
legally obligated to pay as ultimate net loss because of:

### A.  Personal Injury   B.  Property Damage or  C. Advertising Liability

caused by an occurrence during the policy period anywhere in the word.

***

30.     The 1990 UMB precludes certain claims and damages from coverage, including

the following, in relevant part:

### II. EXCLUSIONS

This policy does not apply:
. . .
**(k)** (1) Personal Injury or Property Damage arising out of the actual alleged or
   threatened
      discharge, dispersal, release or escape of pollutants:

   a.   That are or that are contained in any property that is:

      1.   Being moved from the place where such property or pollutants are
           accepted by the insured for movement into or onto an automobile;

      2.   Being transported or towed by an automobile;

      3.   Otherwise in the course of transit;

      4.   Being stored, disposed of, treated or processed in or upon an
           automobile; or

      5.   Being moved from an automobile to the place where such property
           or pollutants are finally delivered, disposed of or abandoned by the
           insured.

   b.   At or from premises owned, rented or occupied by insured;

13

    c.  At or from any site or location used by or for the insured or others for the handling, storage, disposal, processing or treatment of waste material;

    d.  Which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the insured or any person or organization for whom the insured may be legally responsible; or

    e.  At or from any site or location on which the insured or any contractors or subcontractors working directly or indirectly on the insured's behalf are performing operations:

        1.  To test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize the pollutants; or

        2.  If the pollutants are brought on or to the site or location by or for the insured;

(2) Any loss, cost or expense arising out of any governmental direction or request that the Named Insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fume, acids, alkalis, chemicals, and waste materials. Waste includes materials which to be recycled, reconditioned or reclaimed.

***

31.    The 1990 UMB also contains the POLLUTION EXCLUSION endorsement, Form No. 64-7596 (5-86).  This endorsement provides as follows:

<strong>POLLUTION EXCLUSION</strong>

This policy does not apply to:

(1) "Personal injury" or "Property damage" arising out of the actual, alleged, or threatened discharge, dispersal, release or escape of pollutants:

    (a)  At or from premises owned, rented or occupied by the Named Insured;

14

       (b) At or from any site or location used by or for the Named Insured or others for the handling, storage, disposal, processing or treatment of waste material;

       (c) Which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the Named Insured or any person or organization for whom the Named insured may be legally responsible; or

       (d) At or from any site or location on which the Named Insured or any contractors or subcontractors working directly or indirectly on the Named Insured's behalf's behalf are performing operations:

           (i) To test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants, or

           (ii) If the pollutants are brought on or to the site or location by or for the Named Insured.

     (2) Any loss, cost or expense arising out of any governmental direction or request that the Named Insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fume, acids, alkalis, chemicals, and waste materials. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

However, this exclusion does not apply to "Personal Injury" or "Property Damage" arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile owned, leased, rented or loaned to the insured, but only to the extent that coverage is available to the insured for the automobile in the underlying insurance as set forth in the Schedule of Underlying Insurance.

***

32.    Certain conditions impact coverage under the 1990 UMB, including the following:

**VII. CONDITIONS**

. . .

**3.  Insured's Duties in the Event of Occurrence, Claim or Suit**

       (a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given

15

by or for the insured to the company or any of its authorized agents as soon as practicable.

(b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

(c) The insured shall cooperate with the company and upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution of indemnity against any person or organization who may be liable to the insured because or personal injury, property damage or advertising liability with respect to which insurance is afforded under this policy and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense.

33.     The 1990 UMB assigns special meaning to certain words, including the following:

## VI. DEFINITIONS

When used in this policy (including endorsements forming a part hereof) . . .

**5.  occurrence** means an accident, or a happening or event, or a continuous or repealed exposure to conditions which unexpectedly or unintentionally results in personal injury, property damage, or advertising liability. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence.

. . .

**8.  property damage** means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom; or (2) loss of use or tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period;

\*\*\*

34.     Upon information and belief, Targett's did not renew the 1990 UMB and obtained insurance coverage with another insurance carrier upon its lapse in July 1991.

35.     NGM is unaware of any insurance policies issued to Targett's covering policy periods between July 2, 1991 and June 30, 2012.

16

36.     NGM then issued Commercial Umbrella Policy No. CUT72448F to Targett's Inc. & TD Properties of Keene LLC by for the policy period effective July 1, 2012 through July 1, 2013 ("the 2012 UMB"). A true and accurate copy of the 2012 UMB is annexed hereto as <u>Exhibit D</u> and incorporated by reference in its entirety.

37.     The 2012 UMB's coverage form (Form. No. CU 00 01 12 07) contains the following insuring agreement that provides, in relevant part, as follows:

> **SECTION I – COVERAGES**
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
>   **a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any claim or "suit" for which we may have the duty to defend. But:
>     **(1)** The amount we will pay for the "ultimate net loss" is limited as described in Section **III** – Limits of Insurance; and
>     **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** and **B**.
>       No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.
>   **b.** This insurance applies to "bodily injury" and "property damage" only if:
>     **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>     **(2)** The "bodily injury" or "property damage" occurs during the policy period; and
>     **(3)** Prior to the policy period, no insured listed under Paragraph **1.a.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that

17

the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

**c.** "Bodily injury" or property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.a.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.a.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part of the "bodily injury" or "property damage" to use or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damage because of the "bodily injury" or "property damage;"

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

\*\*\*

38.    The 2012 UMB precludes coverage for certain claims and damages, including the following, in relevant part:

    **2. Exclusions**

    This insurance does not apply to:

    . . .

    **i.  Pollution**

        **(1)** "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged, or threatened discharge, dispersal, seepage migration, release or escape of "pollutants" at any time; or

        **(2)** "Pollution cost or expense."

    This exclusion does not apply if valid "underlying insurance" for the pollution liability risks described above exists or would have existed but for exhaustion of the underlying limits for "bodily injury" and "property damage." Coverage

18

provided will follow the provisions, exclusions, and limitations of the "underlying insurance."

. . .

**m. Damage To Property**

"Property damage" to:

. . .

**(2)** Premises you sell, give away, or abandon, if the "property damage" arises out of any party of those premises.

. . .

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

\*\*\*

39.     Certain conditions impact coverage under the 2012 UMB, including the following:

**SECTION IV – CONDITIONS**

. . .

**3.  Duties in The Event Of Occurrence Claim Or Suit**

**a.**   You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.**   If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.**   You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation, settlement or defense of the claim or "suit;" and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.**   No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense other than for first aid without our consent.

\*\*\*

40.     The 2012 UMB assigns special meaning to words, including the following:

**SECTION V – DEFINITIONS**

. . .

**3.**  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury."

. . .

**13.**  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

**15.**  "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.**  "Pollution cost or expense" means any loss, cost or expense arising out of any:

**a.**  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of, "pollutants," or

**b.**  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants."

. . .

**18.**  "Property damage" means:

**a.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.**  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property. As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications, software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**19.**  "Retained limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention," whichever applies.

. . .

**21.**  "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.**  An arbitration proceeding in which such damages are claimed and to which you must submit or does submit with our consent; or

      **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

. . .

**23.** "Ultimate net loss" means the total sum, after reduction of recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

**24.** "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of "Underlying Insurance."

                                    ***

41.    The 2012 UMB was renewed for the policy period effective July 1, 2013 through July 1, 2014 ("the 2013 UMB"). The 2013 UMB contains the same liability coverage form (Form. No. CU 00 01 12 07) as the 2012 UMB, with an identical insuring agreement, exclusions, conditions, and definitions.

42.    The 2013 UMB was renewed for the policy period effective July 1, 2014 through July 1, 2015 ("the 2014 UMB"). The 2014 UMB contains an updated liability coverage form (Form. No. CU 00 01 04 13) which has insuring agreement, exclusions, conditions, and definitions that are largely identical to those in the 2012 UMB. The 2014 UMB's exclusion **2.i. Pollution** is slightly modified in the updated coverage form, however, and provides as follows:

**2.  Exclusions**

This insurance does not apply to:

. . .

   **i.  Pollution**

      **(1)** "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged, or threatened discharge, dispersal, seepage migration, release or escape of "pollutants" at any time; or

      **(2)** "Pollution cost or expense."

   This exclusion does not apply if valid "underlying insurance" for the pollution liability risks described above exists or would have existed but for exhaustion of the underlying limits for "bodily injury" and "property damage." To the extent this exclusion does not apply, the insurance provided under this Coverage Part for the pollution risks described above will follow the same

provisions, exclusions, and limitations that are contained in the applicable "underlying insurance" unless otherwise directed by this insurance.

\*\*\*

A true and accurate copy of the 2014 UMB is annexed hereto as <u>Exhibit E</u> and incorporated by reference in its entirety.

43.     The 2014 UMB was renewed on a yearly basis for successive policy periods through July 1, 2018. Each renewal policy contained the same liability coverage form (Form. No. CU 00 01 04 13) with an insuring agreement, exclusions, conditions, and definitions that are identical to those in the 2014 UMB.

44.     Upon information and belief, Targett's allowed the NGM Policies to lapse upon their expiration in July 2018 and obtained any subsequent insurance coverage from another carrier.

<u>The CERCLA Claim</u>

45.     The Property continued to be utilized as a dry-cleaning facility until approximately 2018 when the business operating it, Roger's Fabricare, ceased operations.

46.     The Town of Windsor ultimately initiated tax foreclosure proceedings against the Property.

47.     On or around May 1, 2020, while the Town of Windsor ("the Town") was commencing the tax foreclosure proceedings, the Vermont Department of Environmental Conservation ("VTDEC") requested the United States Environmental Protection Agency's ("EPA") assistance to address a suspected release of chlorinated solvents to soil and soil gas originating from the Property.

48.     On or around August 10, 2020, the Town acquired title to the Property via a deed that is recorded in the Windsor Registry of Deeds in Book 196, Page 798.

49.     Between September 2020 and March 2021, the EPA conducted a preliminary assessment and site investigation and found containers of tetrachloroethylene ("PCE") product inside the building; elevated levels of PCE in the soil gas under the building; and asbestos in the building materials.

50.     Based on the assessment and investigation results, the EPA determined that a removal action was warranted to remove the PCE containers.

51.     The EPA further determined that the building would first need to be demolished and the debris removed in order to address the subsurface release of PCE.

52.     The EPA consulted with the State of Vermont and the Town of Windsor and decided its removal action would address the PCE containers; the Town would then address the building, and a subsequent EPA removal action would address mitigation of vapor intrusion issues.

53.     In May and June of 2021, the EPA conducted a removal action to remove two drums containing PCE products and 975 pounds of PCE product from a dry-cleaning machine.

54.     The Town estimated the cost of demolishing and removing the building and identified hazardous materials at $400,000, which exceeded its budget, and thus the EPA agreed to add the building demolition and removal to its removal action.

55.     On or around July 5, 2022, the EPA issued a *Notice of Potential Liability and Invitation to Perform or Finance Proposed Cleaning Activities* to Targett's as well as several other prior owner(s) and/or operator(s) of the Property.

56.     In or around April 2023, the Respondents, including Targett, entered into a CERCLA Settlement Agreement ("the Agreement") with the EPA in which Targett agreed to clean up the Property and perform vapor intrusion sampling at nearby properties.

57.     The Agreement imposes stipulated penalties for non-compliance as well as interest.

58.     Targett's first notified Plaintiffs of this claim via tender letter dated May 16, 2023. A true and accurate copy of Targett's tender is annexed hereto as <u>Exhibit F</u>.

59.     MSA and NGM agreed to defend Targett's with respect to this claim subject to a full and complete reservation of rights.

**COUNT ONE – DECLARATORY JUDGMENT – NO DUTY TO DEFEND**

60.     Plaintiffs repeat and reallege the allegations set forth in all prior paragraphs and incorporate them herein.

61.     Plaintiffs are entitled to a declaration regarding their duties and obligations to Targett's under the MSA Policies and the NGM Policies.

62.     The MSA Policies preclude coverage for damages arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

63.     The MSA Policies define the word "pollutant" as any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

64.     The NGM Policies preclude coverage for damages which would not have occurred in whole or in part but for the actual, alleged, or threatened discharge, dispersal, seepage migration, release or escape of "pollutants" at any time or "pollution cost or expense."

65.     The NGM Policies define the term "pollutant" as any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fume, acids, alkalis, chemicals, and waste materials.

66.     The NGM Policies define the term "pollution cost or expense" as any loss, cost, or expense arising out of any **a.** request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of, "pollutants;" or **b.** claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants."

67.     The PCE and other hazardous materials found at the Property are "pollutants" as that term is defined by the MSA Policies and the NGM Policies.

68.     The CERCLA claim and removal action against Targett's by the EPA is a "pollution cost or expense" as that term is defined by the NGM Policies.

69.     The MSA Policies and the NGM Policies preclude coverage for "property damage" to premises you sell, give away, or abandon, if the "property damage" arises out of any part of those premises.

70.     The CERLCA claim alleges "property damage" arising out of part of premises that Targett's previously owned and sold.

71.     There is no coverage for the CERCLA claim under the MSA Policies because coverage is excluded pursuant to exclusion **B.1.f. Pollution** and/or exclusion **B.1.k.(2) Damage to Property**.

72.     There is no coverage for the CERCLA claim under the 1990 UMB because coverage is excluded pursuant to exclusion **k(1)**, **k(2)**, and the POLLUTION EXCLUSION endorsement.

73.     There is no coverage for the CERCLA claim under the remaining NGM Policies because coverage is excluded pursuant to Exclusion **2.i. Pollution** and **2.m. Damage to Property**.

74.     Targett's breached the conditions of the MSA Policies and the NGM Policies in that it failed give Plaintiffs notice of this claim as soon as practicable.

75.     Targett's breached the conditions of the MSA Policies and the NGM Policies in that it failed to immediately forward to Plaintiffs every demand or notice received with respect to this claim.

76.     Plaintiffs are entitled to a declaration that they do not have any duty to defend Targett's with respect to the CERCLA claim under the MSA Policies and/or the NGM Policies.

**COUNT TWO – DECLARATORY JUDGMENT – NO DUTY TO INDEMNIFY**

77.     Plaintiffs repeat and reallege the allegations set forth in all prior paragraphs and incorporate them herein.

78.     Plaintiffs are entitled to a declaration that they do not have any duty to indemnify Targett's with respect to the CERCLA claim under the MSA Policies and/or the NGM Policies.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Main Street America Assurance Company and NGM Insurance Company, respectfully request a judgment as follows:

A. Declaring that the Plaintiffs are not obligated to defend Targett's, Inc. with respect to the CERCLA claim;

B. Declaring that the Plaintiffs are not obligated to indemnify Targett's, Inc. with respect to the CERCLA claim;

C. Awarded Plaintiffs their attorney's fees and costs in this action; and

D.  Awarding such other and further relief allowed by law and/or equity as the Court deems

just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs,  Main  Street  America  Assurance  Company  and  NGM  Insurance

Company, hereby demand a jury trial.

Plaintiffs,
MAIN STREET AMERICA ASSURANCE
COMPANY and NGM INSURANCE COMPANY,
By Its Attorneys:

*/s/ Scott T. Ober*
Scott T. Ober, Esq. #5192
sober@hassettdonnelly.com
Casey L. McCaffrey, Esq. #
cmccaffrey@hassettdonnelly.com
Hassett & Donnelly, P.C.
446 Main Street, 12th Floor
Worcester, MA  01609
Tel.: (508) 791-6287
Fax: (508) 791-2652

Dated:  August 21, 2024